[No. 26350. *En Banc*. October 29, 1937.]

R. A. GRAHAM *et al., Appellants,* v. YAKIMA STOCK BROKERS, INC., *Respondent.*[1]

*Cheney & Hutcheson* and *Walter J. Robinson, Jr.,* for appellants.

*Snively & Bounds* and *John Gavin,* for respondent.

GERAGHTY, J.—This action was brought by the plaintiffs to recover for services rendered under, and damages for the breach of, a written contract for the performance of certain development work on a mine in the state of Idaho. The complaint was filed in the superior court of Yakima county February 24, 1934, but had been served on the defendant some time before that date.

The plaintiffs, non-residents of Yakima county at the time of the service of the complaint upon the de-

[1]Reported in 72 P. (2d) 1041.

fendant, were represented by MacMahon and Poe, attorneys residing in the city of Tacoma. After a cost bond had been furnished, the defendant interposed a demurrer to the complaint, as well as a motion to make more definite and certain. These were argued and taken under advisement by the court. Nearly a year thereafter, the court advised the parties of its decision, and, on February 18, 1935, an order was entered granting, in part, the motion to make more definite and certain.

After compliance by the plaintiffs with the court's ruling, the defendant, on March 4, 1935, served upon MacMahon and Poe its answer by mail, setting up an affirmative defense and cross-complaint, in which it sought recovery of $10,500 for alleged improper performance of tunnel work under the contract.

On July 30, 1935, plaintiffs having failed to serve their reply to the answer and cross-complaint or make any other or further appearance, the defendant's attorneys mailed to MacMahon and Poe, at Tacoma, a motion for default, supported by affidavit.

An order of default was entered August 7, 1935. On the day preceding the entry of this order, however, August 6th, the law firm of Cheney and Hutcheson, of Yakima, served notice on the attorneys for the defendant of their substitution in the action as attorneys for the plaintiffs, and requested that all further notices therein be served upon them; and, on August 7th, served upon the defendant's attorney a reply denying all of the material allegations of the defendant's affirmative defense and cross-complaint. This notice of substitution was not signed by MacMahon and Poe, nor had they, prior to that time, formally notified the defendant or its attorneys of their withdrawal from the case.

The record discloses no further proceedings in the

case until May 5, 1936, when findings and conclusions were made and judgment thereon entered, awarding the defendant damages in the sum prayed for in its affirmative defense and counterclaim and dismissing plaintiffs' action.

On May 15, 1936, the plaintiffs, by their counsel, Cheney and Hutcheson, moved to vacate the order of default and judgment. The motion was supported by an affidavit signed by Joseph C. Cheney and Elwood Hutcheson, attorneys for the plaintiffs, in which affiants state that, shortly prior to July 30, 1935, they had been substituted as attorneys for plaintiffs, although no notice of substitution had been served or filed; that, by reason of the change of attorneys, the motion for default was referred by MacMahon and Poe to the plaintiffs, then residing and working at South Bend, Washington, who promptly mailed it to affiants; that the motion and affidavit were mailed by MacMahon and Poe to the plaintiffs on August 1, 1935, and thereupon mailed by plaintiffs to affiants, and were received by them on August 6th; that affiants, on the same day the motion and affidavit were received, prepared a notice of substitution of attorneys and served it upon Snively and Bounds, attorneys for the defendant; that affiants also prepared a reply denying all of the affirmative allegations of the answer and cross-complaint, and served it upon Snively and Bounds on August 7, 1935.

They state that, without any notice whatever to the plaintiffs or their attorneys, the attorneys for the defendant, on August 7, 1935, subsequent to the service of the notice of substitution of attorneys and the service of reply, caused an order of default to be made and entered; that the default judgment of May 5, 1936, was entered without the knowledge of affiants or notice to them, and that they were not aware of

the entry of the order of default or the default judgment until May 8, 1936.

The affiants also state that, in April, 1936, plaintiffs instituted a suit in the United States district court of Idaho, to recover for work performed by the plaintiffs under the tunnel contract and for damages for breach thereof, alleging that the contract was executed by the defendant, Yakima Stock Brokers, Inc., as agent for the Penman Mines Corporation, of which it was a subsidiary; that, on May 8, 1936, affiants were served with the answer of the defendant in the Idaho action, and from this learned for the first time of the entry of an order of default and judgment in the Yakima county case.

I. J. Bounds, one of the attorneys for the defendant, filed a controverting affidavit, in which he states that, subsequent to the order of default, the firm of Cheney and Hutcheson filed notice of substitution of attorneys, but that in the substitution they failed to comply with the requirements governed by statute. The affidavits on both sides contain much other matter not material to the immediate issue.

The motion to vacate the order of default and judgment was denied June 13, 1936, with leave to the plaintiffs to renew the motion. While the order denying the motion does not recite the fact, it appears the motion to vacate was denied because MacMahon and Poe had not served a formal notice of their withdrawal as attorneys for the plaintiffs.

Subsequently, June 16, 1936, formal notice of substitution was filed in the cause by MacMahon and Poe and Cheney and Hutcheson, who renewed the motion to vacate the default order and judgment.

On June 27, 1936, the court made an order vacating the order of default, findings, conclusions, and judgment. The order of vacation was made for the reason

that it did not appear from the record that the defendant's motion for default had ever been noted for argument.

On this day, Cheney and Hutcheson re-served and filed the plaintiffs' reply to the affirmative defense and cross-complaint. Upon the vacation of the order of default and judgment, the attorneys for the defendant noted the motion for default for argument, and July 6, 1936, the court made an order granting the motion.

An appeal taken by the plaintiffs from this order of default was dismissed by this court on the ground that an appeal did not lie. *Graham v. Yakima Stock Brokers, Inc.,* 190 Wash. 269, 67 P. (2d) 899.

Subsequent to the entry of the second order of default, and on December 10, 1936, the court, on *ex parte* application of the defendant, made findings and conclusions and entered judgment in favor of the defendant, upon its cross-complaint, in the sum of $10,500, as prayed for. Thereafter, the plaintiffs moved to vacate the second default order and judgment.

█ Under the established rule in this jurisdiction, an appeal lies from the default judgment.

"While the judgment was by default, it is a final one, from which an appeal lies as from any other final judgment. *Oregon R. & N. Co. v. McCormick,* 46 Wash. 45, 89 Pac. 186. In *Rhode Island Mortgage, etc., Co. v. Spokane,* 19 Wash. 616, 53 Pac. 1104, we stated that the California act relating to appeals is substantially the same as ours, and subscribed to the following rule enunciated in *Hallock v. Jaudin,* 34 Cal. 167:

" 'As to the right of appeal, there is no distinction between judgments by default and judgments after issue joined and a trial. The former is as much a final judgment as the latter, and the statute gives a right to appeal from all final judgments without distinction. From this it follows that all errors disclosed by the record can be reviewed and corrected on an appeal from the former class of judgments as well as

the latter. This is too plain for argument, and we do not hesitate to declare that all cases which are to the contrary are unsupported by any provision of the law by which the jurisdiction and practice of this court is regulated. To hold otherwise would be to create a distinction where the law has not, which we have no power to do.' " *Peha's University Food Shop v. Stimpson Corp.*, 177 Wash. 406, 31 P. (2d) 1023.

While we have recited with some detail the facts preceding the vacation of the first order of default, we are not now concerned with the propriety of the entry of that order, since it was subsequently vacated. The controlling question before us is whether or not, on the record as it stood after the vacation of that order, there was an abuse of discretion in the making of the second order of default on July 6, 1936.

Whether or not default will be granted in any given case, is within the court's discretion and dependent upon the circumstances.

"The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case, this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates." *Bailey v. Taafee*, 29 Cal. 424; quoted in *Hull v. Vining*, 17 Wash. 352, 49 Pac. 537.

It is also a rule that, where default has been denied or vacated by the trial court, a stronger case showing abuse of discretion is required for reversal than where trial on the merits has been denied. *Agricultural & Livestock Credit Corp. v. McKenzie*, 157 Wash. 597, 289 Pac. 527.

Considering the merits of the question, it is to be

borne in mind that, by the entry of default, the plaintiffs were not only denied a trial on the allegations of their complaint, but were also subjected to an affirmative judgment in favor of the defendant in a large sum without an opportunity to contest the claim.

It is also apparent from the record that, prior to the making of the first motion for default, neither party had evinced any great desire to bring the cause to a speedy trial. The trial court itself had held the initial motion directed to the complaint under advisement for nearly a year. Whether the delay in serving a reply to the affirmative matter of respondent's answer was chargeable to the appellants themselves or attributable to the confusion ensuing from the change of attorneys, nevertheless they acted diligently when advised of the state of the pleadings by receipt from the Tacoma lawyers of the motion for default. This was forwarded to Cheney and Hutcheson, in Yakima, who immediately informed the attorneys for the respondent of their substitution, although doing so informally in not having the signature of MacMahon and Poe.

But whatever the state of the record at the time of the entry of the first default order, when the second order was made the appellants were in court with properly accredited attorneys and a pleading responsive to the cross-complaint. As plaintiffs, they were not required to make a showing of merit in addition to that set out in their complaint. *Harringer v. Keenan,* 117 Wash. 311, 201 Pac. 306.

Considering the nature of the issues and the state of the record, we are of the opinion that it was an abuse of discretion to enter the second default.

*Moe v. Wolter,* 134 Wash. 340, 235 Pac. 803, was a case somewhat like this in that, relying on the advice of counsel, defendant had failed to make any appear-

ance in an action instituted on substitute service while he was absent from the state. In reviewing a default judgment, the court said:

"The statute, of course, contemplates that a person of suitable age and discretion, receiving a summons and complaint in the absence of the person named as defendant, will promptly transmit them to him or advise him of the making of the substituted service. This was done, and upon the receipt of the papers in California, the defendant did just what an ordinarily prudent and careful man would do—consulted attorneys. That they or he misconstrued the situation, seems to us, under the circumstances, to be entirely excusable; at any rate, he relied upon their advice, as any reasonable man would, and we think his showing in that respect entirely sufficient to call into action the discretion of the court and, in the exercise of that discretion, to justify the setting aside of the default judgment and awarding a trial upon the merits."

The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.

STEINERT, C. J., MAIN, BEALS, BLAKE, ROBINSON, and SIMPSON, JJ., concur.

MILLARD, J. (dissenting)—One hundred and forty-two days subsequent to service upon the appellants of respondent's answer and cross-complaint, order of default was entered. More than ten months elapsed before proper substitution of attorneys filed in the cause. At that time, appellants sought vacation of the order and judgment of default, which was too late. No diligence was shown. The trial court did not abuse its discretion. The judgment should be affirmed.

HOLCOMB, J., concurs with MILLARD, J.